IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

U.S. DISTRICT COURT
SO. DIST. AL.
33602

2001 MAY 21  P 4: 49

FILED
CLERK'S OFFICE

| | |
|---|---|
| RAYMOND MAURICE SONNIER III, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| COMPUTER PROGRAMS & SYSTEMS, INC., | ) |
| | ) |
| Defendant. | ) |

CIVIL ACTION 00-0505-MJ-L

## MEMORANDUM OPINION AND ORDER

This matter was referred pursuant to 28 U.S.C. 636(c) to the undersigned with the written consent of the parties to conduct all proceedings including trial and entry of judgment. This cause is now before the Court on the defendant's motion for summary judgment and supporting memorandum of law (Docs. 11, 12, and 13), plaintiff's responses thereto (Docs. 15 and 19), and the defendant's reply to plaintiff's response (Doc. 20). Also received are defendant's supplemental motion for summary judgment and supporting brief, defendant's supplemental suggested determinations of undisputed fact and conclusions of law, plaintiff's second supplemental opposition to summary judgment, and defendant's reply thereto. (Docs. 23-27.) The undersigned has determined that a hearing is not necessary. Upon consideration of all matters presented, and for the reasons stated herein, the defendant's motion for summary judgment is **GRANTED** as to all claims.

# I. BACKGROUND

Plaintiff contends that he has been discriminated against based on his age and disability/ perceived disability. Specifically, plaintiff claims that he was denied promotions, was transferred and ultimately terminated because of his age and/or disability. The defendant has moved for summary judgment arguing that plaintiff's termination was based not on any discriminatory reason, but on plaintiff's threat to blow up the defendant's place of business. Moreover, the defendant denies that plaintiff's transfer was an adverse employment action and states that plaintiff's claim of discriminatory failure to promote is untimely. The plaintiff has responded that the defendant's proffered reason for termination is pretextual and that his transfer was adverse. The plaintiff further argues that his claim of discriminatory failure to promote is timely because the failure to promote, coupled with the alleged discriminatory transfer and termination, constitute a continuing violation.

## A.    Facts[1]

Defendant Computer Programs and Systems, Incorporated ("CPSI") sells integrated information systems to hospitals. On July 8, 1996, CPSI hired plaintiff as a conversion coordinator. As a conversion coordinator, plaintiff was responsible for managing and overseeing the conversion of data from a client hospital's old system to the CPSI System 2000.

On March 24, 1997, plaintiff was placed on indefinite probation following allegations of inappropriate touching of female employees. (Doc. 12, Exhibit 1, Exhibit A, Exhibit B.) Although plaintiff signed the "employee statement" generally agreeing with the allegations and

---

[1]The facts are not controverted except where noted.

2

acknowledging his probationary status, plaintiff now disputes the issue. (Doc. 19, Exhibit 1, at 3.) While working as a conversion coordinator, plaintiff trained "other members of the conversion team", including Wendy Thornton and Michael Steele. According to the plaintiff, Ms. Thornton and Mr. Steele were promoted over plaintiff in late 1998 as team leaders; the promotions outraged plaintiff and he complained to his manager that he had been overlooked for a promotion. (Doc. 15, plaintiff's affidavit, at 1.)

On January 20, 1999, plaintiff suffered a stroke. He took a medical leave of absence through May 16, 1999. Prior to his return to CPSI, plaintiff met with Mellissa Hammons, vice president of financial software services, who oversaw the management of several departments including the conversion and electronic billing departments. Hammons and the plaintiff discussed plaintiff's job placement upon his return to CPSI, and the decision was made that plaintiff would return to work as an electronic media technician.[2]

In June of 1999, an incident allegedly occurred involving plaintiff and two other employees, Barbara McIlwain and Karen Waggoner. McIlwain and Waggoner aver that the plaintiff became enraged at them, screaming, trembling and turning red while talking of "meddling" into plaintiff's business or making plaintiff look bad. (Doc. 12, Exhibits 3 and 4.) Plaintiff denies raising his voice at either co-worker. (Doc. 19, Exhibit 1, at 2.) Spencer

---

[2]Plaintiff maintains that he did not seek the transfer and saw the job as superfluous, as there was already an electronic media technician. (Doc. 19, Exhibit 1, at 1.) The defendant characterized plaintiff's transfer as an accommodation, moving plaintiff at his own request to a "less stressful" position without changing his salary or benefits. (Doc. 12, Exhibit 1, at 2.) The plaintiff states that Hammons made the decision to transfer plaintiff to the electronic billing department, which he did not contest because of fear of adverse consequences including termination.

Williams, supervisor of the electronic billing department, reported the alleged incidents to Mellissa Hammons. Hammons states that she did not document the allegations because of plaintiff's probationary status, but rather advised Williams to speak to plaintiff and assure him that CPSI valued his work and no one was trying to make plaintiff "look bad". (Doc. 12, Exhibit 1.)

On June 23, 1999, Wade Stringer and plaintiff engaged in a conversation. Expressing dissatisfaction with CPSI, plaintiff alleges that he stated to Stringer, "wouldn't you like to see a federal investigation about the management practices of the company and blow it wide open." (Doc. 15). After the conversation, Stringer reported to his supervisor Spencer Williams that plaintiff had just threatened to blow up CPSI. Specifically, Stringer stated that plaintiff said, "I will get my pound of flesh one way or another, even if I have to blow this [expletive deleted] place up!" (Doc. 12, Exhibit 5.) Williams reported the statement to Hammons. A meeting was held on the afternoon of June 23, 1999 to discuss the alleged incident. Present were Hammons, director of human resources Paul Pacey, and the president, vice president, and chief financial officer of CPSI. The participants made the unanimous decision to fire Sonnier if it was confirmed that Sonnier had actually threatened to blow up CPSI. Pacey then met with Wade Stringer, who stated that plaintiff had made a statement threatening to blow up CPSI.

On June 24, 1999, Pacey and Hammons held a meeting with plaintiff and terminated plaintiff's employment. Hammons states that plaintiff did not directly deny the statement, however, plaintiff states that he unambiguously denied ever threatening to blow up CPSI. After plaintiff's termination, defendant hired a security guard in an effort to protect its employees from the execution of the alleged threat made by the plaintiff.

## II. STATEMENT OF THE LAW

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitle to judgment as a matter of law.

Fed.R.Civ.P. 56(c). A factual dispute is "'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing [substantive] law." *Id.; accord, Tipton v. Bergrohr GMBH-Siegen,* 965 F.2d 994, 998 (11th Cir. 1992), *cert. denied ,* 507 U.S. 911, 113 S.Ct. 1259, 122 L.Ed.2d 657 (1993).

The basic issue before the Court on a motion for summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson,* 477 U.S. at 251-252. The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden, the Court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir. 1993); *Tipton,* 965 F.2d at 989-999. "If reasonable minds could differ on the inferences arising from undisputed facts, then a court must deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518,

1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust Co. v. Fidelity & Deposit Co.,* 750 F.2d 838, 841 (11th Cir. 1985)). In addition to demonstrating that there is no genuine issue of material fact, the movant must also satisfy the ultimate burden of persuasion on the claim by showing that it would be entitled to a directed verdict at trial. *Fitzpatrick,* 2 F.3d at 1116.

Once the movant satisfies its initial burden under Rule 56(c) of demonstrating the absence of a genuine issue of material fact, the burden shifts to the nonmovant to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e))(emphasis omitted). Otherwise stated, in order to preclude summary judgment, the nonmovant must "show the existence of a genuine issue as to a material fact." *Fitzpatrick,* 2 F.3d at 1116. "A mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir. 1990)(citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." *Tipton,* 965 F.2d at 998 (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)). "[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton,* 965 F.2d at 999 (quoting *Anderson,* 477 U.S. at 255 (citing *Adickes,* 398 U.S. at 158-159)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita,* 475 U.S. at 587 (quotation marks and citation omitted).

The purpose of summary judgment "is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Resolution Trust Corp. v. Dunmar Corp.,*

43 F.3d 587, 592 (11th Cir. 1995), *cert. denied sub nom. Jones v. Resolution Trust Corp.,* 516 U.S. 817, 116 S.Ct. 74, 133 L.Ed.2d 33 (1995). Therefore,

> [i]n opposing a motion for summary judgment, "a party may not rely on his pleadings to avoid judgment against him." *Ryan v. Int'l Union of Operating Eng'rs, Local* 675, 794 F.2d 641, 643 (11th Cir. 1986). There is no burden upon the district court to distill every potential argument that could be made upon the materials before it on summary judgment. *Blue Cross & Blue Shield v. Weitz,* 913 F.2d 1544, 1550 (11th Cir. 1990). Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned. *Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.,* 10 F.3d 1563, 1568 (11th Cir. 1994)(citing *Lazzara v. Howard A. Esser, Inc.,* 802 F.2d 260, 269 (7th Cir. 1986)), *cert. denied,* 513 U.S. 868, 115 S.Ct. 189, 130 L.Ed.2d 122 (1994).

*Id.* at 599. The "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The failure by the nonmoving party to make a sufficient showing on an essential element of its action entitles the moving party to judgment as a matter of law. Id. at 323, 106 S.Ct. at 2552.


**B.     ADEA and ADA Claims**

Plaintiff has filed suit under the Age Discrimination Employment Act (ADEA), 29 U.S.C. §§ 621-34, and the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-17. Under the ADEA, it is "unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "As the Supreme Court has stated:

> [w]hen a plaintiff alleges disparate treatment, liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision.

7

That is, the plaintiff's age must have actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome."

*Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000); quoting *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 141, 120 S.Ct. 2097, 2105, 147 L.Ed.2d 105 (2000)(internal marks and citations omitted).

Plaintiff has also claimed that "after the plaintiff suffered his stroke, he was denied promotions and was transferred by the defendant to a position with the intent to terminate his employment. Plaintiff's termination was because of his disability or the perception of his disability." (Doc. 1, at 3.) The Americans with Disabilities Act mandates that no covered employer shall discriminate against "a qualified individual with a disability because of the disability of such individual" in any of the "terms, conditions [or] privileges of employment." 42 U.S.C. § 12112(a). Under the ADA, employers have the duty to provide reasonable accommodations for known disabilities unless doing so would result in undue hardship to the employer. *Morisky v. Broward County,* 80 F.3d 445, 447 (11th Cir. 1996). To establish a *prima facie* case of discrimination in violation of the ADA, the plaintiff must prove that (1) he has a disability; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination because of his disability. *Id., see also Durley v. APAC, Inc.,* 236 F.3d 651, 657 (11th Cir. 2000); *Witter v. Delta Air Lines, Inc.,* 138 F.3d 1366, 1369 (11th Cir. 1998). A "qualified individual with a disability" is an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Under the first prong, a person has a disability under the ADA if he (1) has a "physical or mental impairment that substantially limits

one or more of the major life activities of such individual;" (2) has "a record of such an

impairment;" or (3) is "regarded as having such an impairment."  42 U.S.C. § 12102(2).


## III. DISCUSSION

This Court analyzes plaintiff's claims of age discrimination and perceived disability

discrimination under the Supreme Court's framework found in *McDonnell Douglas Corp. v.*

*Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Department of*

*Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089.  *Combs v. Plantation Patterns,* 106

F.3d 1519, 1527-28 (11th Cir. 1997), *cert. denied sub mob. Combs v. Meadowcraft Co.,* 522 U.S.

1045, 118 S.Ct. 685, 139 L.E.2d 632 (1998).  As the Eleventh Circuit cogently stated in

*Chapman,*

> Under [the *McDonnell Douglass* and *Burdine*] framework, the plaintiff must first
> establish a prima facie case of discrimination.  *See Combs,* 106 F.3d at 1527-28
> (citations omitted).  One method a plaintiff can use to establish a prima facie case
> for an ADEA violation is by showing that he (1) was a member of the protected
> age group, (2) was subjected to adverse employment action, (3) was qualified to
> do the job, and (4) was replaced by or otherwise lost a position to a younger
> individual.  *See Benson v. Tocco, Inc.,* 113 F.3d 1203, 1207-1208 (11th Cir. 1997).

> > Establishment of the prima facie case in effect creates a presumption that
> > the employer unlawfully discriminated against the employee.  If the trier of
> > fact believes the plaintiff's evidence, and if the employer is silent in the
> > face of the presumption, the court must enter judgment for the plaintiff
> > because no issue of fact remains in the case.

> *Combs,* 106 F.3d at 1528 quoting *Burdine,* 450 U.S. at 254 (footnote omitted)).

> If a plaintiff establishes a prima facie case of discrimination, the defendant
> employer must articulate a legitimate, non-discriminatory reason for the
> challenged employment action.  *See id.*  However, the employer's burden is
> merely one of production; it 'need not persuade the court that is was actually
> motivated by the proffered reasons.  It is sufficient if the defendant's evidence

9

raises a genuine issue of fact as to whether it discriminated against the plaintiff.'
*Id.* At 1528 (quoting *Burdine,* 450 U.S. at 254-55, 101 S.Ct. At 1094 (citation and footnote omitted)).

> If the defendant articulates one or more such reasons, the presumption of discrimination is eliminated and 'the plaintiff has the opportunity to come forward with evidence, including produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.' *id.* (citations omitted.) If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim. *See id.* at 1529 (holding that there must be 'sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of each of the employer's proffered reasons for its challenged action').

*Chapman*, 229 F.3d at 1024-25. Finally, job discrimination cases are no different from other cases for purposes of summary judgment. *Id.,* at 1026 ("The long and short of it is that the summary judgment rule applies in job discrimination cases just as in other cases. No thumb is to be placed on either side of the scale.")

## A. TERMINATION

The Court begins by engaging in a *McDonnell Douglas* and *Burdine* analysis of plaintiff's claims of discriminatory termination, viewing the facts in the light most favorable to the plaintiff.

Regarding age discrimination, the first step of establishing a *prima facie* case is satisfied because the defendant has stipulated that plaintiff can establish a prima facie case of age discrimination:

> [F]or the purpose of summary judgment, CPSI concedes that at the time of his termination, Sonnier was at least 40 years of age; he was otherwise qualified for the position of electronic media technician; he was fired by CPSI; and, Sonnier's position was filled by an individual younger than 40 years of age.

(Doc. 12, n. 4.)

However, the plaintiff has not made a *prima facie* case of wrongful termination under the

ADA. The first element plaintiff must establish to proceed under the ADA is that he suffers from

a disability or a perceived disability. *Morisky v. Broward County,* 80 F.3d 445, 447 (11th Cir.

1996). Though he has alleged a disability, the plaintiff has furnished no evidence to document

that plaintiff suffers from a "physical or mental impairment that substantially limits one or more

of the major life activities" or that he has "a record of such an impairment."[3]  42 U.S.C. §

12102(2). The plaintiff suffered a stroke, but there is no evidence of a resulting disability.

Indeed, the plaintiff's statements suggest that he had no side effects whatsoever when he returned

to work. (Doc. 15, plaintiff's affidavit)  However, the plaintiff has also pled that he was

terminated based upon perceived disability, the third element of § 12102(2).[4]  "As with real

impairments, courts have held that a perceived impairment must be substantially limiting and

_____

[3]The only statements in support of a claim of disability are found in plaintiff's arguments
on summary judgment. Plaintiff's motion to hold summary judgment in abeyance pending
completion of discovery (Doc. 15) states, relating to an ADEA claim, that "(i) at the time he was
fired, [plaintiff] was a member of the class protected by the ADEA . . . and/or had a medical
condition resulting from his stroke. . . ." (Doc. 15, at 13.)  The statement is repeated verbatim in
plaintiff's supplemental opposition to summary judgment. (Doc. 19 at 12.)  The plaintiff has not
offered in the complaint, subsequent pleadings, original briefs in opposition to summary
judgment, or the most recent "second supplemental opposition to summary judgment" any facts
to establish that plaintiff actually suffers from "a medical condition resulting from his stroke."
*Id.*

[4]Perceived disability or "regarded as" claims apply to an individual who (1) has a physical
or mental impairment that does not substantially limit major life activities but is treated by her
employer as constituting such limitation; (2) has a physical or mental impairment that
substantially limits major life activities only as a result of the attitudes of others toward such
impairment; or (3) has no illness or malady defined by the EEOC as a physical or mental
impairment but is treated by his employer as having a substantially limiting impairment. 29
C.F.R. § 1630.2(*l*).

significant. In this context a significant impairment is one that is viewed by the employer as generally foreclosing the type of employment involved, not just a narrow range of tasks." *Gordon v. E.L. Hamm & Associates,* 100 F.3d 907, 913 (11th Cir. 1996), citing *Ellison v. Software Spectrum, Inc.,* 85 F.3d 187, 192 (5th Cir. 1996), 29 C.F.R. § 1630.2(j)(3). Moreover, to proceed under a "regarded as" claim for perceived disability under the § 12102(2) of the ADA, plaintiff would have to show that his employer "regarded him as being significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes" at CPSI. *Witter v. Delta Air Lines,* 138 F.3d 1366, 1370 (11th Cir. 1998). The undersigned is not satisfied that the plaintiff has established a prima facie case for perceived disability. The records shows that plaintiff's transfer from the conversion department to the electronic media department upon returning to work was only an alteration of specific job tasks, not a general "foreclosing of the type of employment" necessary to state a perceived disability claim which ultimately resulted in termination. In short, plaintiff fails to direct this court to any evidence that defendant's perception of plaintiff's abilities after his stroke was the cause of his termination. Even so, this Court will analyze plaintiff's ADA claims along with the ADEA claim under the assumption that he has stated a *prima facie* case for perceived disability.

Since the defendant has conceded that plaintiff has stated a *prima facie* case of age discrimination and the court is assuming arguendo that plaintiff has established a *prima facie* of disability discrimination, the next question is whether the defendant has met its burden of production and articulated a "legitimate, non-discriminatory reason for the challenged employment action." The defendant has met its burden of production, for it has stated repeatedly, and produced evidence to support its assertion that plaintiff was fired over his threat

to blow up CPSI, an obvious non-discriminatory reason to terminate employment. The presumption of discrimination has therefore been eliminated. Accordingly, the plaintiff must "come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Combs*, 106 F.3d at 1528.

The plaintiff has denied that he ever threatened to blow up CPSI. For summary judgment purposes, this Court must draw all inferences in plaintiff's favor. Accordingly, the Court presumes that plaintiff's statement, as recounted in his affidavit, that he would like to see a federal investigation blow CPSI's employment practices wide open was taken out of context and falsely reported. Even so, the record establishes--and the plaintiff has not shown otherwise--that, whatever the plaintiff said on the afternoon of June 23, 1999, the defendant fired plaintiff because they thought he had threatened to blow up the defendant's place of business. As the Eleventh Circuit stated in *Chapman*,

> A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer. Provided that the proffered reasons is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason.

*Chapman*, 229 F.3d at 1030. Moreover, an "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 1984)(emphasis added). *See also Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999)("We are not in the business of adjudging whether

13

employment decisions are prudent or fair. Instead our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision.").

It is the plaintiff's responsibility, after the defendant has offered a legitimate, non-discriminatory reasons for the termination, to show that a genuine issue of material fact exists on the question of whether the alleged justification was pretextual. As the Eleventh Circuit stated in *Combs,*

> The district court must evaluate whether the plaintiff has demonstrated 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'

*Combs,* 106 F.3d at 1538 (citation omitted).

The Court has reviewed plaintiff's pleadings opposing summary judgment, as well as the attached exhibits. The plaintiff has attempted to create a genuine issue of material fact by presenting evidence that he did not threaten to blow up the defendant's place of business and that the reporting employee's veracity on the issue is questionable.[5] In sum, plaintiff's evidence attempts to show that the defendant's decision to terminate him was based on an erroneous report of another employee. The plaintiff presents no evidence that the defendant knew or should have

---

[5]The plaintiff also attempts to create a genuine issue of material fact by disputing various facts alleged by the defendant. These facts include whether plaintiff willingly agreed to be transferred, whether he screamed at his co-workers, whether he committed the offense for which he was on probation, and whether he told Ms. Hammons he was in anger management therapy. Since the defendant does not allege that any of these alleged facts formed the basis of the termination, any dispute regarding them does not relate to whether the defendant's reason for termination is pretextual. Therefore, evidence concerning these issues does not create a genuine issue of material fact as to the truth of the employer's proffered reason for the termination.

known at the time that the report was erroneous[6]. In other words, even if the plaintiff is able to prove that he did not make the threat, the fact remains unrebutted that the defendant thought he did. Therefore, the plaintiff's evidence regarding the veracity of the report is inconsequential as to whether a genuine issue of material fact remains. A fact is material only when the dispute over it has the potential to change the outcome of the lawsuit under the governing law if found favorably to the non-movant. *Anderson*, 477 U.S. at 248.

Plaintiff cites the court to *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097 (2000), for the proposition that where there is a colorable issue regarding the falsity of the defendant's proffered reason the plaintiff is entitled to go forward to a jury. In *Reeves*, the defendant was terminated after forty years with his employer. The employer stated that the plaintiff was fired because of failure to maintain accurate attendance and hourly records of employees whom he supervised. *Reeves*, 530 U.S., at 138. In response, the plaintiff introduced evidence that he had accurately maintained the records of employees whom he supervised, and that his supervisor had demonstrated age-based animus in his dealings with the plaintiff. *Id.* After a verdict in the plaintiff's favor and a reversal by the Fifth Circuit, the Supreme Court granted *certiorari*. The Supreme Court held that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted [non-discriminatory] justification is false, <u>may</u> permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 533 U.S. at 147 (emphasis added). The Supreme Court noted that the

---

[6]There is however evidence in the record that defendant believed that plaintiff had made the threat, in that the defendant hired a security guard to protect the premises and its employees in the event the plaintiff attempted to carry out the threat.

15

plaintiff made a "substantial showing that [defendant's] explanation was false" by offering evidence that he had properly maintained the employee attendance records, and that errors in monthly reports were not attributable to the plaintiff. *Id.,* at 145.

*Reeves* does not stand for the proposition that any evidence of falsity, regarding the reason for termination, combined with a prima facie case is sufficient to withstand summary judgment. *See Hutchison v. Weiss, Peck and Greer, L.L.C.*, 2000 WL 1836757 (2nd Cir. 2000) (unpublished opinion). Rather, "whether a prima facie case plus an employer's pretextual reason for firing is sufficient to overcome a motion for summary judgment depends on 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case. . . .' *Id.* at *2, quoting *Reeves*, 120 S.Ct. at 2109.

Although the plaintiff has argued *Reeves* as a basis to proceed to trial, the holding in *Reeves* does not support plaintiff's argument. Unlike *Reeves,* the plaintiff in this case has not made a substanital evidentiary showing that the proffered reason for firing Sonnier--his alleged threat to blow up the building-- was false and therefore pretextual for terminating the plaintiff on the basis of his age or disability. While plaintiff questions the veracity of the employee who reported the alleged threat, he fails to cast any doubt on the defendant's acceptance of the report.

Moreover, the only other evidence in the record that could be relied on to rebut the veracity of the defendant's explanation for the employment action is Sonnier's statement in his affidavit:

> I was told by Julia Dover, once a human resource manager, after I was fired, that during the time I was out on medical leave, she was told by a member of management that 'they' had already made the decision to fire me before I got back

16

from my stroke.

(Doc. 19, Exhibit 1, at 5.) There is neither a deposition nor an affidavit of Julia Dover in the record; the plaintiff's statement stands alone. However, even if the plaintiff substantiated this evidence, the evidence fails to support plaintiff's claim that the termination was based on age or a perceived disability. This evidence would merely show that the defendant may have had other undisclosed motives for firing the plaintiff; it in no way shows that these motives were based on age or a perceived disability. The detailed evidence which the plaintiff in *Reeves* provided to rebut the proffered explanation stands in sharp contrast to the plaintiff Sonnier's hearsay statement that defendant had planned to fire plaintiff prior to the alleged threat to bomb the defendant. In sum, the plaintiff has not demonstrated "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the proffered explanation which would render it "unworthy of credence". *Combs*, 106 F.3d at 1538. "[A]n employee's subjective belief of discrimination alone is not sufficient to warrant judicial relief." *Augustes v. Veimillion Parish School Board*, 2001 WL 392261, *2 (5th Cir. 2001). Accordingly, the defendant's motion for summary judgment on the claim wrongful termination based on age or perceived disability is **GRANTED.**

## B. TRANSFER

Regarding plaintiff's claim of discriminatory transfer, the complaint states, "[a]dditionally or in the alternative, after the plaintiff suffered his stroke, he was denied promotions and was transferred by the defendant to a position with the intent to terminate his employment." (Doc. 1, at 3.) Plaintiff also stated in his affidavit submitted in opposition to summary judgment that ,

> [d]uring my recovery, my wife and I met with Mellissa Hammons, the director of software support. She told me that I would be moved to electronic media technician. I was instantly concerned because Wade Stringer was already an electronic media technician and there was no need for another one. I agreed to the transfer however, partly because I was frustrated with the lack of promotion in the conversion department. The main reason I agreed, however, was because I knew well that if I tried to disagree with Mellissa's edict, I would be terminated.

(Doc. 15, plaintiff's affidavit, at 1.) The plaintiff has also made a nonspecific claim of discriminatory transfer in violation of the ADEA.

To state a *prima facie* case for discriminatory transfer under the ADEA or the ADA, the plaintiff must establish that he was subjected to an adverse employment decision. Typically, the "transfer of an employee which results in a substantial reduction in the employee's income is an adverse employment action." *Eskra v. Provident Life and Accident Insurance Company*, 125 F.3d 1406, 1411. *See also Baker v. Sears, Roebuck & Co.*, 903 F.2d 1515, 1519 (department store employee's transfer to different department resulting in $15,000 loss in annual income constituted adverse employment action for purposes of ADEA).

On plaintiff's claim that he was transferred in violation of the ADA and/or the ADEA, this Court is guided by the Eleventh Circuit's opinion in *Doe v. Dekalb County School District*, 145 F.3d 1441 (11th Cir. 1998). In *Doe*, an HIV positive teacher filed suit against his employers under the ADA. The plaintiff, who taught children with severe behavioral disorders, was transferred to an assignment involving students with mild disorders once the teacher notified his supervisors that he was HIV positive. *Doe*, 145 F.3d at 1444. As in the case before this court, the defendant in *Doe* maintained that the transfer was voluntary, while the plaintiff argued that he

had no choice in the transfer.[7]  *Id.*  Among other issues, the Eleventh Circuit addressed the

question of whether the plaintiff's transfer constituted an "adverse employment action"

prohibited by the ADA, and whether a subjective or objective standard should be used in making

that determination.  The Eleventh Circuit "adopt[ed] an objective test: An ADA plaintiff must

demonstrate that a reasonable person in his position would view the employment action in

question as adverse."  *Id.,* at 1448-49.  As the Court explained,

> It is important not to make a federal case out of a transfer that is *de minimis*,
> causing no objective harm and reflecting a mere chip-on-the-shoulder complaint.
> However, it is equally important that the threshold for what constitutes an adverse
> employment action not be elevated artificially, because an employer's action, the
> extent that it is deemed not to rise to the level of an adverse employment action, is
> removed completely from any scrutiny for discrimination.

*Doe,* 145 F.3d at 1453, n. 21.

Under the objective test, the question is thus whether a reasonable person in Sonnier's

position would view the transfer from conversion coordinator to electronic media technician as

adverse; because there is no subjective consideration, Sonnier's personal perceptions are

irrelevant.  The court notes plaintiff's subjective belief that he was transferred to set him up for

---

[7]The question of whether the transfer was voluntary is not material to the question of
discrimination under the ADA.  The Eleventh Circuit explained in *Doe* that

> the voluntary or involuntary nature of the transfer is not relevant to the question of
> whether it was unlawfully adverse.  Of course, a finding that Doe's transfer was
> purely voluntary would have been dispositive in the School District's favor; a
> transfer cannot be 'because of a disability' if it occurred as a result of an
> employee's own request [citations omitted].  The fact that Doe's transfer was
> involuntary, does not in any way establish that it was legally adverse.

*Doe,* 145 F.3d at 1454.

failure with the intent to fire him.[8]  However, objectively it is undisputed that the plaintiff

suffered no loss in benefits or compensation on his transfer to the electronic billing department.

(Doc. 12, Exhibit 1, at 2.)  Instead the plaintiff simply was given new job responsibilities on his

return to work.  And significantly, both the plaintiff and the defendant marked the plaintiff's

initial satisfaction with his new position.  (Doc. 12, Exhibit 1, at 3; Doc. 19, Exhibit 1, at 2.)

There is no evidence in the record that the transfer was an objectively adverse employment

action; therefore the plaintiff has failed to establish a *prima facie* case.  In sum, the record shows

only a transfer, not a discriminatory transfer.[9]  Summary judgment in favor of the defendant on

plaintiff's discriminatory transfer claim is **GRANTED**.

---

[8]The plaintiff stated in his affidavit,

> I was told by Julia Dover, once a human resources manager, after I was fired, that
> during the time that I was out on medical leave, she was told by a member of
> management that 'they' had already made the decision to fire me before I got back
> from my stroke.  I believe my 'transfer' to a position that was not needed was a
> set-up for failure.  When I did not fail, but actually thrived, then I believe that the
> company invented a reason to fire me, knowing that the reason was false.

Doc. 19, Exhibit 1, at 5.  Plaintiff's subjective statement is the only factual basis for his claim
that a transfer was part of a scheme to fire him.  As such, plaintiff's statement is the only
evidence in the record supporting his claim that his transfer was part of a discriminatory scheme
and pretext to fire plaintiff because of his stroke, and it is an insufficient basis to present the
question to a jury.  There is no objective evidence to support plaintiff's theory that his transfer
was adverse because it was a set-up to fire him.

[9]The plaintiff has characterized the transfer as a "set up for failure" but the statement is
belied by plaintiff's own affidavit, in which he states that he worked well in his new department
and was even being considered for a promotion over a co-worker who had more experience in the
department.  (Doc . 15, plaintiff's affidavit at 2.)

## C.    DENIAL OF PROMOTION[10]

The plaintiff also alleged that he was denied promotions based on his age.  Specifically,

plaintiff's complaint stated that,

> [d]uring and up until the time he was fired, the plaintiff was subjected to
> discrimination on the basis of his age.  Specifically, the plaintiff was denied
> promotions and pay raises in favor of younger, less experienced workers, and was
> transferred to another department with the intent to terminate him.  Plaintiff
> complained of the discriminatory practices to Defendant on numerous occasions. .
> . .

(Doc. 1, ¶8.)  The plaintiff subsequently averred that he trained other members of the conversion

team who had no experience, including Wendy Thornton and Michael Steele, who were

promoted over the plaintiff in late 1998 as team leaders; the promotions outraged plaintiff and he

complained to his manager that he had been overlooked for a promotion. (Doc. 15, plaintiff's

affidavit, at 1.)  The plaintiff states that he did not have time to pursue a grievance before he

suffered his stroke.

The defendant has argued, and the undersigned agrees, that the plaintiff's claim of

discriminatory failure to promote is time barred.  The only promotions in the record which

plaintiff argues support his claim for discriminatory failure to promote are the promotions of

Thornton and Steele in late 1998.  A plaintiff's age discrimination claim is time barred if the

plaintiff "knew or reasonably should have known of the challenged acts more than 180 days prior

to" the filing of a discrimination claim with the EEOC. *Hargett v. Valley Federal Savings Bank,*

---

[10]The claim of failure to promote necessarily relates only to plaintiffs' age claims, as he
alleged no instance of failure to promote on return to work.  Indeed, the plaintiff averred that his
work as an electronic media technician offered the potential for promotion over a co-worker who
had more experience.  (Doc. 15, affidavit at 2.)

60 F.3d 754, 760 (11th Cir. 1995), citing *Allen v. United States Steel Co.,* 665 F.2d 689, 692 (5th Cir. (Unit B) 1982); *Hill v. MARTA,* 841 F.2d 1533, 1545 (11th Cir. 1988), *as amended after rehearing,* 848 F.2d 1522 (11th Cir. 1988). The Court will assume, *arguendo,* that Thornton and Steele's promotions occurred as late as December 31, 1998. Under that assumption, plaintiff had until June 29, 1999, to file a claim with the EEOC. He did not do so. Rather, plaintiff filed a claim on August 20, 1999, some 213 days after his stroke and some 52 days after any discriminatory promotion claim based on a supposed December 31, 1998, occurrence should have been filed with the EEOC. On its face, the discriminatory promotion claim is time barred.

In response to defendant's argument that the promotion claim is time barred, plaintiff argues that the failure to promote was part of a continuing series of violations which also included plaintiff's transfer to the electronic media department in May of 1999, and plaintiff's termination on June 24, 1999. The plaintiff correctly notes that where "an employee charges an employer with continuously maintaining an illegal employment practice, he may file a valid charge of discrimination based upon that illegal practice until 180 days after the last occurrence of an instance of that practice." *Beavers v. American Cast Iron Pipe Co.,* 975 F.2d 792, 796 (11th Cir. 1992) (quoting *Gonzalez v. Firestone Tire & Rubber Co.,* 610 F.2d 241, 249 (5th Cir.1980). This continuing violation doctrine provides that a claim, which otherwise would be precluded because it is based on conduct which falls outside of the 180-day filing period, may nonetheless be considered timely if there is a "substantial nexus" between that conduct and conduct occurring within the filing period. *See Roberts v. Gadsden Memorial Hospital,* 835 F.2d 793, 800 (11th Cir. 1988). In other words there must be a specific act of discrimination within the filing period and a substantial link between this act and the alleged misconduct outside of the filing period

which forms the basis of plaintiff's claim. The court need not reach the issue of whether there is a substantial nexus between the acts because the plaintiff has failed to demonstrate that a discriminatory act transpired within the appropriate time frame.

The Court has analyzed, *supra,* the two alleged continuing acts of discrimination-- unlawful transfer and unlawful termination-- and has concluded that summary judgment is due to be granted in favor of the defendant on each claim. Therefore, since there was no specific act of discrimination within the filing period, plaintiff can not assert a continuing violation. "An absolute prerequisite for a continuing violation is the existence of a timely discriminatory act." *Davis v. State of California Department of Corrections,* 1996 WL 271001, *40 (E.D. Cal.). Accordingly, because the plaintiff cannot cite his transfer or termination as evidence of a continuing violation, plaintiff's claim of discriminatory transfer is time-barred. Defendant's motion for summary judgment on the claim of discriminatory transfer is due to be **GRANTED.**

## CONCLUSION

It is **ORDERED** that summary judgment be and it hereby is entered upon all claims in this cause of action in favor of the defendant. This case is **DISMISSED WITH PREJUDICE.**

DONE and ORDERED this 21st day of May, 2001

KRISTI D. LEE
UNITED STATES MAGISTRATE JUDGE